IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROBERT TRACY WARTERFIELD,    §
TDCJ No. 1829999,            §
                             §
        Petitioner,          §
                             §
V.                           §          No. 3:18-cv-3154-N-BN
                             §
DIRECTOR, TDCJ-CID,          §
                             §
        Respondent.          §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

"A jury convicted [Petitioner] Robert Tracy Warterfield of aggravated sexual assault of a child and assessed punishment at life in prison." *Waterfield v. State*, No. 05-12-00646-CR, 2013 WL 3957010, at *1 (Tex. App. – Dallas July 31, 2013, pet. denied), *aff'g State v. Warterfield*, No. F10-61655-Y (Crim. Dist. Ct. No. 7, Dallas Cnty., Tex.). This judgment was affirmed on appeal. *See generally id.* And the Texas Court of Criminal Appeals (the CCA) granted Warterfield "the opportunity to file an out-of-time petition for discretionary review" (a PDR), *Ex parte Warterfield*, WR-82,182-01, 2015 WL 13402650 (Tex. App. Aug. 26, 2015), but subsequently refused his PDR, *see Ex parte Warterfield*, WR-82,182-01 (Tex. Crim. App. Feb. 10, 2016).

The CCA later denied Waterfield's application for state habeas relief without written order on the findings of the trial court after a hearing. *See Ex parte Warterfield*, WR-82,182-05 (Tex. Crim. App. Sept. 12, 2018) [Dkt. No. 17-39]; *see also* Dkt. No. 17-60 at 19-33 (trial court's findings of fact and conclusions of law and counsel's affidavit). And the United States Supreme Court denied Warterfield's

petition for certiorari. *See Warterfield v. Texas*, No. 18-7042, 139 S. Ct. 1192 (2019).

Waterfield then filed a timely *pro se* application for a writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 3. The State responded. *See* Dkt. No. 16. He replied. *See* Dkt. No. 21. And United States District Judge David C. Godbey referred Waterfield's Section 2254 proceeding to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny federal habeas relief.

## Applicable Background

The trial in this case was held in January 2012, but the offense at issue in this case occurred in 1989. Using the pseudonym Kelly Gibson, the complainant testified to the following facts. In October 1989, she was seven years old. She lived in a house with her parents and five siblings. The night of September 30, 1989, after Gibson had gone to bed and gone to sleep, she woke up and realized that she had been picked up and was being carried. There was a pillowcase over her head. The person who was carrying her was speaking to her and telling her not to say anything. At first she was half asleep, and she was not alarmed because she thought it was her grandfather's voice. Gradually she realized it was not her grandfather, and the person told her not to say anything or he would kill her. The person took her outside and set her down on the ground. He took the pillowcase off, but it was so dark that Gibson could not clearly see him. He told her to take her panties off, and she did. She felt touching, intense pressure, and pain around her vagina. Then the man put his penis in her mouth and told her to lick it until the pee came out. She complied, and he ejaculated into her mouth. Then the man left, and she ran back into her house. She went to the kitchen and rinsed her mouth out with water. She then told her parents what had happened, and the police came. She remembered that she was taken to the hospital, where they took her t-shirt away and gave her a physical examination.

Gibson's mother testified that the t-shirt Gibson was wearing at the time of the incident was given to the police.

Police officer Christine Ramirez testified that in October 2010 she

obtained a search warrant relating to appellant and that she executed the search warrant the same day. Appellant was already under arrest at the time. Pursuant to the warrant, Ramirez took a saliva sample from appellant via a buccal swab. Ramirez then sent the sample to the Southwestern Institute of Forensic Science (SWIFS).

Angela Fitzwater, a forensic biologist at SWIFS, also testified at trial. She performed DNA testing on appellant's buccal swab and generated a report on the results. SWIFS had a t-shirt cutting that had been obtained in 1989 and stored in its archived evidence storage area. Fitzwater obtained a DNA profile from a sperm sample from a stain on the t-shirt cutting. The DNA profile from the t-shirt stain revealed a mixture of DNA from at least two people. The major contributor to the DNA mixture was a male, and it matched the DNA sample obtained from appellant. The probability of a random match was, conservatively, 1 in 4.09 quadrillion. On cross-examination, Fitzwater testified that the DNA tests she performs in her job did not exist in 1989.

After the complainant testified, and over appellant's objection, the trial judge allowed the State to call officer Ramirez back to the stand. She confirmed that she did not remain in the courtroom after her previous testimony to hear any other witness's testimony. She testified to more details about her contact with appellant the day she executed the search warrant. She also explained the chain of custody of the buccal swab when she personally delivered it to SWIFS. Then the State called Fitzwater back to the stand. Fitzwater further explained where the items she tested for DNA are kept at SWIFS, in a freezer in the evidence registration unit. And she explained the SWIFS receipt and documentation of the t-shirt it had received on October 2, 1989. The DNA tests were performed on stains that were on parts of the t-shirt that were cut away from the shirt. The cuttings from the t-shirt are still available today. Fitzwater also testified that the complainant's DNA was also found on the t-shirt samples.

The State rested, and appellant moved for an instructed verdict, which the trial judge denied. Appellant then rested without putting on any evidence, and both sides closed. The jury found appellant guilty. After the punishment phase of the trial, the jury assessed punishment at life in prison. The judge rendered judgment on the jury's verdict, and appellant appealed.

*Warterfield*, 2013 WL 3957010, at *1-*2

## Legal Standards and Analysis

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district

court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted). This is because, "[u]nder AEDPA, state courts play the leading role in assessing challenges to state sentences based on federal law." *Shinn v. Kayer*, 141 S. Ct. 517, 526 (2020) (per curiam).

Warterfield raises some 16 grounds for federal habeas relief: six raise ineffective assistance of his trial counsel; four raise ineffective assistance of his counsel on direct appeal; and he further alleges that the trial court erred, that the prosecution committed misconduct, that insufficient evidence supports his conviction, that a 1994 plea agreement was breached or misconstrued, and that a state appeals court justice was unfit.

I.    Warterfield procedurally defaulted Grounds 7, 10, and 11 and – possibly – Ground 9. Alternatively, he has not shown that Ground 9 was unreasonably adjudicated.

"The threshold questions on habeas review under the [AEDPA] are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in 'procedural default' on a claim." *Washington v. Louisiana*, Civ. A. No. 18-5744, 2018 WL 6706234, at *2 (E.D. La. Nov. 29, 2018) (citing *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing, in turn, 28 U.S.C. § 2254(b), (c))), *rec. adopted*, 2018 WL 6697195 (E.D. La. Dec. 20, 2018).

And the State responds preliminarily that three of Warterfield's grounds – that he was denied due process based on that the jury instructions failed to include a

limitations period in effect related to his 1994 plea agreement [Ground 7]; that, at the motion for new trial stage, he was not admonished as to proceeding *pro se* [Ground 10]; and that the prosecution knowingly presented material false testimony and evidence by overstating DNA statistics and fabricating probable cause [Ground 11] – are procedurally defaulted and that a fourth ground – that the evidence was not sufficient to support his conviction [Ground 9] – is unexhausted and therefore also procedurally defaulted.

"Under the doctrine of procedural default, [federal courts] are precluded from reviewing 'claims that the state court denied based on an adequate and independent state procedural rule.'" *Murphy v. Davis*, 737 F. App'x 693, 702 (5th Cir. 2018) (per curiam) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

For the following reasons, the undersigned agrees that the Court may not now consider Grounds 7, 10, and 11 and – possibly – Ground 9. Alternatively, Waterfield has not shown that Ground 9 was unreasonably adjudicated.

First, the CCA, by denying Warterfield's state habeas application based on the trial court's findings, found that it was barred from considering Grounds 7, 10, and 11 because Warterfield failed to raise them on direct appeal. *See* Dkt. No. 17-60 at 23, 24 (specifically finding that each claim is procedurally barred because it was not raised on direct appeal).

*Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996), *clarified on reh'g* (Feb. 4, 1998), "bars consideration of claims that could have been but were not raised on direct appeal" and "is 'an adequate state ground capable of barring federal

habeas review.'" *Murphy*, 737 F. App'x at 702 (quoting *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005) (quoting, in turn, *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004))).

Warterfield fails to excuse these defaults by showing (not just alleging) either that "cause for the default[s] and actual prejudice exist" or that "failure to consider his claim[s] will result in a miscarriage of justice." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). And, insofar as he also tries to excuse these defaults under the exception established by *Martinez v. Ryan*, 566 U.S. 1 (2012), expanded to Texas prisoners by *Trevino v. Thaler*, 569 U.S. 413 (2013), *see* Dkt. No. 21 at 7-10, the *Martinez/Trevino* exception does not apply to these grounds.

> "In *Martinez*, the Supreme Court held,
>> Where, under state law, claims of ineffective assistance of trial counsel [IATC] must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.
>
> [566 U.S. at 17]. In 2013, the Supreme Court confirmed that *Martinez* applied to Texas prisoners who technically had the ability to bring their IAC claim on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition.

*Crutsinger v. Stephens*, 576 F. App'x 422, 430 (5th Cir. 2014) (per curiam) (citing *Trevino*, 569 U.S. at 428-29), *abrogated on other grounds by Ayestas v. Davis*, 138 S. Ct. 1080 (2018).

In sum, "*Trevino* permits a Texas prisoner to overcome the failure to raise a substantial ineffective-assistance claim in state court by showing that state habeas counsel was ineffective." *Ayestas*, 138 S. Ct. at 1093-94 (citing *Trevino*, 569 U.S. at

429). But *Trevino* does not permit a Texas prisoner to overcome the failure to raise non-IATC claims in state court, like Grounds 7, 10, and 11. *See, e.g.*, *Murphy*, 732 F. App'x 249, 256-57 (5th Cir. 2018) ("Under *Martinez* and *Trevino*, the ineffectiveness of state habeas counsel may excuse a petitioner's procedural default 'of a single claim' – ineffective assistance of trial counsel. *Davila*, 137 S. Ct. at 2062. No court appears to have extended *Martinez* and *Trevino* to excuse procedural default of a *Brady* or *Napue* claim. We are also bound by our past pronouncements that *Martinez* and *Trevino* apply 'only' to ineffective assistance of trial counsel claims. *See, e.g.*, *Speer v. Stephens*, 781 F.3d 784, 785 (5th Cir. 2015). And the Supreme Court in *Davila* was unwilling to extend *Martinez* and *Trevino* beyond ineffective assistance of trial counsel claims, calling the exception 'narrow,' 'highly circumscribed,' and available only in 'limited circumstances.' 137 S. Ct. at 2065-66." (citation modified)).

And, to the extent that any one of these grounds also relates to an IATC claim, as Warterfield argues on reply, *see* Dkt. No. 21 at 8, the Court's analysis as to adjudication of the IATC claims is set out below.

Next, through Ground 9, Warterfield asserts that the evidence was not sufficient to support his conviction, a ground he raised on direct appeal. *See Warterfield*, 2013 WL 3957010, at *5-*6 (rejecting this claim: "Viewing the evidence in the light most favorable to the verdict, we hold that a rational juror could conclude beyond a reasonable doubt that the t-shirt tested by SWIFS in 2010 was the t-shirt worn by the complainant on the night of the attack in 1989. A rational juror could also conclude beyond a reasonable doubt, based on the results of the 2010 DNA

testing of the t-shirt, that appellant's DNA was present on the t-shirt, and thus that he committed the attack on the complainant.").

Waterfield did not raise this claim in his state habeas application. Nor could he have. *See Bessire v. Quarterman*, No. 4:07-cv-597-Y, 2009 WL 54257, at *2 (N.D. Tex. Jan. 8, 2009) ("Under Texas law, while an allegation of 'no' evidence is cognizable in a state habeas proceeding, a sufficiency-of-the-evidence claim may only be raised on direct appeal and may not be raised in a state habeas proceeding." (citing *West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996); *Grigsby*, 137 S.W.3d at 674; *Clark v. Texas*, 788 F.2d 309, 310 (5th Cir. 1986); *Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994))).

And, insofar as he also did not raise it in his PDR, *see* Dkt. No. 16 at 11 n.3, the factual and legal basis for this ground was not "fairly presented to the" CCA, as the highest available state court, for review, which means that Warterfield has failed to properly exhaust state remedies as to this ground, *Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court' so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'" (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004))); *see* 28 U.S.C. § 2254(b)(1)(A).

Unexhausted claims should be found procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at

735 n.1. And Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4.

This is a codification of the judicially created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9.

Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. But Waterfield has not shown that the claim would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he shown that the "fundamental miscarriage of justice" exception to procedural bar applies.

For these reasons, the Court should deny this ground as procedurally barred.

Alternatively, insofar as the CCA considered the version of Waterfield's PDR containing this claim, *see* Dkt. No. 16 at 11 n.3, Waterfield has not shown that the

state court adjudication of this claim, *see Warterfield*, 2013 WL 3957010, at *5-*6, was unreasonable under the standards set out below. The reasonableness of this adjudication is discussed in further detail below.

II.    Warterfield fails to show that the state court unreasonably adjudicated his remaining claims [Grounds 1-6, 8, and 12-16 (and possibly Ground 9)].

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The statute therefore "restricts the power of federal courts to grant writs of habeas corpus based on claims that were 'adjudicated on the merits' by a state court," *Shinn*, 141 S. Ct. at 520 (citation omitted). And, "[w]hen a state court has applied clearly established federal law to reasonably determined facts in the process of adjudicating a claim on the merits, a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Further, "[u]nder § 2254(d)," the reasonableness of the state court decision – not whether it is correct – "is '"the only question that matters."'" *Id.* at 526 (quoting *Richter*, 562 U.S. at 102); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."); *Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by AEDPA" under "28 U.S.C. § 2254(d)"). And nothing "in AEDPA or [the Supreme] Court's precedents permit[s] reduced deference to merits decisions of lower state courts." *Shinn*, 141 S. Ct. at 524 n.2 (citing 28 U.S.C. § 2254).

Starting with Section 2254(d)(1), a state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

As noted above, "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon"

(citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state

court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the

district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination.… In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942. Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could

have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

### A.    Ineffective Assistance of Counsel (IAC) [Grounds 1-6 and 13-15]

Waterfield claims that his trial counsel [Grounds 1-6] and his counsel on direct appeal [Grounds 13-15] all violated his Sixth Amendment right to effective assistance.

The Court reviews the merits of properly exhausted IAC claims, whether asserted against either trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*, 466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's

denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly

deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."); *see also Canfield v. Lumpkin*, ___ F.3d ____, No. 18-10431, 2021 WL 2024940, at *3 (5th Cir. May 21, 2021) ("*Strickland* … imposes a high bar on those alleging ineffective assistance of counsel. But 28 U.S.C. § 2254(d) … raises the bar even higher."); *cf. Shinn*, 141 S. Ct. at 525 ("recogniz[ing] the special importance of the AEDPA framework in cases involving *Strickland* claims," since "[i]neffective-assistance claims can function 'as a way to escape rules of waiver and forfeiture,' and they can drag federal courts into resolving questions of state law" (quoting *Richter*, 562 U.S. at 105)).

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in

tandem, review is 'doubly' so." (internal quotation marks and citations omitted)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation omitted).

In sum, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland*. *See Richter*, 562 U.S. at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101; *see Canfield*, 2021 WL 2024940, at *3 (Federal courts "review state-court adjudications for errors 'so obviously wrong' as to lie 'beyond any possibility for fairminded disagreement,'" presuming the state court "findings of fact to be correct." (footnotes omitted)).[1]

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court ha already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for

The CCA's adjudication of Waterfield's IAC claims is based on the trial court's findings, made after obtaining an affidavit from William Lee Schultz, an attorney Waterfield retained to represent him at trial. *See* Dkt. No. 17-60 at 19-33.

Applicant asserts that trial counsel was ineffective. He specifically alleges seven instances of ineffective representation. His seventh issue alleges cumulative error which this Court finds to be without merit.

Conflict of Interest and Fraud

Applicant asserts that Schultz was retained by his family for two cases – one of which was transferred to Collin County and that Schultz insisted that Applicant assert he was indigent in the Collin County case so that Schultz could be court appointed.

Applicant is complaining about Schultz's alleged actions in regard to the Collin County case. This Court does not have jurisdiction over that case and the issue is not cognizable in this habeas application.

No Challenge to Expert's Testimony

Schultz and [Kimberly A.] Mayer[, deceased by the time the state court made its findings,] hired a DNA expert, Robert Benjamin, in this matter. Benjamin reviewed the records of the DNA testing and sat in on the State's expert's testimony. Benjamin offered no useful information that would have undermined the case.

Unenforced Contract

The Court of Appeals addressed the issue regarding the 1994 plea bargain agreement. The Court of Appeals determined that the plea bargain agreement did not prohibit the State from filing these charges. Rather, it prohibited the State from using the "conviction" in Cause No. 93-43772 for impeachment, as an extraneous offense or in the punishment phase of any subsequent case of which the prosecution had knowledge. Applicant does not argue that the State violated any of the specific written prohibitions. Rather, he complains that this case was filed and prosecuted. As found by the Court of Appeals, the prosecutor did not violate the terms of the contract (plea bargain). The Court of Appeals also found that the agreement was not violated by the State's use of the DNA sample obtained in the 1994 case to compare with the physical evidence in this case to obtain a search warrant. Trial counsel argued to exclude evidence and/or for dismissal of this case based on the 1994 contract.

Jury Charge

relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

Applicant asserts that counsel "allowed" an egregiously harmful jury charge because there was no statute of limitations instructions and it wrongly included an extraneous offense instruction. The Court further addresses these issues in the section immediately following regarding the erroneous jury charge.

Due to amendments to the statute of limitations during the intervening time from the date of the offense to the filing of the case, the statute of limitations was changed from 10 years to no limitation. A jury instruction instructs the jury on the law applicable to the case. Thus, no instruction regarding the statute of limitations was necessary.

Further, the complainant testified she felt "touching, intense pressure, and pain around her vagina. Then the man put his penis in her mouth and told her to lick it until pee came out. She complied, and he ejaculated in her mouth." (Opinion at 2-3). The indictment alleged penetration of the complainant's mouth. Thus, evidence regarding penetration of her vagina was extraneous. The instruction was proper.

Failure to File Motion for New Trial

According to Schultz, Mayer suggested that Applicant hire attorney Erin Healey for the appeal. According to Dallas County computer records, Healey was retained on appeal – not appointed. A motion for new trial was filed on January 19, 2012. The Court agrees with Schultz's statement that the normal practice in filing a motion for new trial is to give the court reporter additional time to file the reporter's record on appeal. The Court has reviewed Applicant's "Example Motion for New Trial..." filed July 28, 2017. The Court finds no merit to those issues and the Court would not have granted a new trial on any issues raised therein.

Alternative Perpetrator Evidence

Schultz states that they considered this theory. However, it would have required evidence to prove and thus would have required Applicant to remember events of which he had no recollection. Further, they had to "deal with the issue of Applicant's fingerprint in another case, of a man who was exonerated of his crime." They believed this might cause the 1994 case to come into evidence. Due to the DNA results being "overwhelming," Schultz did not believe this was a valid theory to pursue.

*Id.* at 20-23.

Applying the deferential *Strickland* standards through the deferential lens of AEDPA to these findings, made after obtaining sworn testimony, Waterfield has not shown that the CCA's denial of any ground he asserts that his trial counsel's

- 22 -

representation violated the Sixth Amendment amounts to either "an unreasonable application of *Strickland* or an unreasonable determination of the evidence." *Garza v. Stephens*, 738 F.3d 669, 680 (5th Cir. 2013) (citing 28 U.S.C. § 2254(d)(1)-(2)); *see also, e.g., Rhodes*, 852 F.3d at 432, 434; *Sanchez*, 936 F.3d at 305.

> Turning to appellate counsel, the state court found:

>> Applicant asserts that appellate counsel failed to raise issues challenging the sufficiency of the evidence, the State's recall of witnesses after they had been excused and the breach of his 1994 contract. The Court of Appeals' opinion, attached to the State's Response, clearly reflects that these issues were raised and rejected on direct appeal. Applicant also asserts that appellate counsel failed to advise him when the opinion was issued and of his right to file a *pro se* Petition For Discretionary Review. Those issues were addressed in Applicant's first application for writ of habeas corpus. The application was **granted** and Applicant was afforded the opportunity to file and out-of-time Petition For Discretionary Review.

>> Applicant has failed to allege any deficiency in his appellate representation that warrants relief.

Dkt. No. 17-60 at 25-26.

And, again, Waterfield has not shown that the CCA's adjudication of these claims was unreasonable.

The Court should therefore deny Grounds 1-6 and 13-15.

## B.    Trial Court and Prosecutorial Error [Grounds 8 and 12 (and possibly Ground 9)]

Warterfield's claims of trial court error not procedurally defaulted – that the trial court failed to properly construe his 1994 plea agreement and that the trial court erred by not granting an instructed verdict based on insufficient evidence – were raised on state habeas review but rejected on direct appeal. The first ground also relates to a similar ground Warterfield makes against the prosecutor – that the State

breached his 1994 plea agreement by prosecuting this case. This claim was also considered and rejected on direct appeal.

So, to determine whether the state court adjudication of these claims was unreasonable, this Court must "'look through' to … the state intermediate appellate court's decision on direct review." *Caldwell v. Davis*, 757 F. App'x 336, 340 (5th Cir. 2018) (per curiam) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 804-06 (1991)); *see Leachman v. Stephens*, 581 F. App'x 390, 395 (5th Cir. 2014) ("a state habeas decision [ ] found that the petitioner's argument[ ] has been 'previously considered and rejected' on direct appeal[, and] … 'in light of that determination' [this Court should] 'examine the last clear state court decision of any substance'" (quoting *Divers v. Cain*, 698 F.3d 211, 216 (5th Cir. 2012))).

### A. Prior plea agreement

In his first issue on appeal, appellant argues that a 1994 plea bargain he entered into barred the State from prosecuting him in the instant case, or at least precluded the State from offering into the evidence the DNA evidence identifying him as the perpetrator of the assault in question.

Some additional facts must be discussed to put appellant's first issue into context. In the instant case, appellant made pretrial motions to dismiss and to suppress evidence based on a 1994 plea bargain. Appellant introduced some relevant documents into evidence at a pretrial hearing, and they were discussed in more detail at a later pretrial hearing. The documents indicate that appellant was charged with sexual assault and aggravated sexual assault in Dallas County in cause number 93-43772. That case involved a different complainant from the instant case. The documents include a "Plea Bargain Agreement" in which appellant agreed to plead guilty and the State agreed to recommend a sentence of ten years' imprisonment and probation of the entire sentence. The agreement is supplemented with a separate document containing the following three paragraphs:

1. The prosecutor agrees that this conviction will not be used for impeachment of the Defendant should he testify in any subsequent case of which the prosecutor has knowledge. (Exhibit "A").

2. Prosecutor agrees this conviction will not be used as an extraneous offense or act against the Defendant in any subsequent case of which the prosecution has knowledge. (Exhibit "A")

3. The Prosecutor agrees that this conviction will not be used in the punishment phase of any subsequent case of which the prosecution has knowledge. (Exhibit "A").

Exhibit A is a piece of paper on which two columns of numbers are handwritten. The first column has a heading "Incident Date" and the second column has a heading "Service # ." One of the incident dates is "10/1/89," which corresponds to the date of the offense in this case. That incident is listed with the service number "691635-X." Appellant's name is handwritten at the bottom of Exhibit A, and it appears to be his signature. Both the plea agreement and the supplemental plea bargain appear to be dated April 1994.

Although appellant invokes "collateral estoppel" in his statement of his first issue, his argument under that issue actually refers to "estoppel by contract." *See Rhodes v. State*, 240 S.W.3d 882, 891-92 (Tex. Crim. App. 2007) (discussing estoppel by contract). In the context of that case, the court held that a defendant could not collaterally attack an agreed judgment that imposed an illegally lenient sentence after enjoying the benefits of that agreed judgment. *Id.* Here, appellant appears to argue that the State is estopped from prosecuting him for the instant offense because in the supplemental plea bargain in cause no. 93-43772, the State agreed it would not do so. But that is not what the supplemental plea bargain says. In that document the State agreed only that "this conviction" – that is, the conviction in cause no. 93-43772 – would not be used for impeachment of appellant, as an extraneous offense against appellant, or in the punishment phase of any subsequent case of which the prosecution had knowledge. The State did not agree not to bring charges based on the incidents listed in Exhibit A. Exhibit A appears to be merely a list of potential cases against appellant, attached to the supplemental plea bargain for the purpose of identifying the potential cases of which the State had knowledge. Appellant does not direct our attention to any improper use of his 1994 conviction in the instant case, and we see none.

Appellant also asserts that there are "Fourth Amendment issues" arising from the State's conduct in this case and the 1994 supplemental plea bargain. He seems to argue that (1) the State agreed not to use any materials related to the 1994 case in any of the subsequent cases listed in Exhibit A, (2) when the State got its search warrant in the instant case, it relied in part on a DNA sample taken from appellant in the 1994 case, (3) without the DNA sample from the 1994 case, the State would have lacked probable cause to get the search warrant in this case, and so (4) the State's reliance on the 1994 DNA sample in this case violated

the supplemental plea bargain, and its search warrant in this case violated the Fourth Amendment. Without conceding the validity of appellant's logic, we reject his argument because the 1994 supplemental plea bargain did not bar the State from using any and all materials related to cause no. 93-43772. It barred the State only from using the "conviction" in that case for certain specified purposes. Even if the State did use materials obtained in the investigation of cause no. 93-43772 to support its search-warrant application in this case, that use did not violate the terms of the supplemental plea bargain.

Appellant's first issue on appeal is without merit.

....

## C. Sufficiency of the evidence

In his third issue on appeal, appellant challenges the legal sufficiency of the evidence to support his conviction. In his fourth issue, he challenges the factual sufficiency of the evidence to support his conviction. In the wake of *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.), we employ only one standard when reviewing the sufficiency of the evidence. *See Bell v. State*, 326 S.W.3d 716, 720 (Tex. App. – Dallas 2010, pet. dism'd). Under this standard, we consider all of the evidence in the light most favorable to the verdict and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Id.* We defer to the jury's determinations of witness credibility and the weight to be given to witness testimony because the jury is the sole judge of those matters. *Id.*

Appellant's argument is that the evidence did not adequately show the chain of custody for the t-shirt that the complainant was allegedly wearing the night she was assaulted and that ultimately tested positive for appellant's DNA. The DNA test was the only evidence showing that appellant was the person who attacked the complainant. The State argues that the evidence was sufficient.

The complainant testified that she was wearing her brother's t-shirt the night of the attack. The complainant's mother also testified that the complainant was wearing her older brother's black t-shirt the night of the assault. She also testified that the police took the shirt as evidence. This was corroborated by hospital records. State's exhibit 28 is a redacted SWIFS report dated October 31, 1989. The report bears the notations "FL# 89P2361" and "DPD# 691635X," and, via redaction, the complainant's pseudonym Kelly Gibson. The report recites that SWIFS received a t-shirt from the police room lockbox on October 2, 1989, and that seminal fluid and spermatozoa were detected on the t-shirt. So this report connects the t-shirt to the complainant and to the listed identification numbers. State's exhibit 21 is a SWIFS report dated November 9, 2010. It recites that SWIFS analyzed the newly obtained buccal swab sample from appellant[1] and compared his DNA profile to

the previously analyzed samples taken from the t-shirt. This report references "Laboratory # : 89P2361–S1" and "Agency # : 691635X," which correspond to the identification numbers on exhibit 28. So the identification numbers on this report connect the t-shirt to the earlier lab report and to the complainant. The report also contains the conclusion that the "conservative random match probability" between appellant and the sperm cell fraction taken from the t-shirt is 1 in 4.09 quadrillion. The reports also show that the complainant's DNA was also present on the t-shirt, further serving to connect the t-shirt to the incident in question. Finally, Fitzwater testified that when evidence is submitted to the SWIFS laboratory, the case is assigned a unique forensic laboratory number, such as the 89P2361 number that appears on the reports. She confirmed that the t-shirt cutting that she tested was the cutting "that had been kept from 1989."

Viewing the evidence in the light most favorable to the verdict, we hold that a rational juror could conclude beyond a reasonable doubt that the t-shirt tested by SWIFS in 2010 was the t-shirt worn by the complainant on the night of the attack in 1989. A rational juror could also conclude beyond a reasonable doubt, based on the results of the 2010 DNA testing of the t-shirt, that appellant's DNA was present on the t-shirt, and thus that he committed the attack on the complainant.

Appellant's issues three and four are without merit.

*Warterfield*, 2013 WL 3957010, at *2-*4, *5-*6.

To successfully challenge the Dallas Court of Appeals's adjudication of these claims under Section 2254, Warterfield must show that the above determinations represent "an unreasonable application of clearly established federal law, as determined by the Supreme Court" or were "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Johnson v. Dir., TDCJ-CID*, No. 9:11cv124, 2012 WL 2277844, at *10 (E.D. Tex. May 10, 2012) (citation omitted), *rec. adopted*, 2012 WL 2277839 (E.D. Tex. June 15, 2012).

This heightened unreasonableness standard of review does not afford relief even if the Court disagrees with the state court's conclusions. Instead, to warrant relief, the state court's conclusions must be "'so lacking in justification' as to remove

'any possibility for fairminded disagreement.'" *Sanchez*, 936 F.3d at 305 ("[T]his is habeas, not a direct appeal, so our focus is narrowed."); *see also Johnson*, 2012 WL 2277844, at *11 ("The federal court cannot reverse a state court decision merely because the federal court would reach a different outcome; rather, the federal court must conclude that the state court applied a correct legal rule to a given set of facts in a manner which was so patently incorrect as to be unreasonable." (citing *Gardner*, 247 F.3d at 560)).

Warterfield has not shown that the state court's reasoned adjudications were "so patently incorrect as to be unreasonable, nor has [he] offered clear and convincing evidence to overcome the presumption that the factual determinations made by the state court in this regard were correct." *Johnson*, 2012 WL 2277844, at *11; *see also* 28 U.S.C. § 2254(e)(1); *Gardner*, 247 F.3d at 560; *Valdez*, 274 F.3d at 948 n.11; *Ford*, 910 F.3d at 235.

The Court should therefore deny these grounds for habeas relief.

## C.    Justice Lewis [Ground 16]

Warterfield finally attacks one of the state appellate justices on his panel. As the state habeas court explained,

> [o]n August 7, 2017, Applicant moved for leave to file a supplemental issue. Therein, he asserts that his due process and equal protection rights were violated by Justice David Lewis being a member of the Court of Appeals' panel that considered his case on direct appeal. He asserts that Lewis was incompetent to discharge his judicial duties and that his misconduct gave the appearance of "hostility, bias and/or partiality."
>         The Court has reviewed 'Exhibit A' to Applicant's supplemental claim which is the "Notice of Formal Proceedings" by the State Commission on Judicial Conduct. The Court notes that this document is a summary of the allegations. It is not a judicial reprimand. The

following numbered statements are taken from the Notice.

   1. Lewis was elected to the Fifth Court of Appeals in November 2012 and began serving on January 1, 2013.

   2. Over a year later, Chief Justice Wright filed a sworn complaint with the State Commission of Judicial Conduct. A doctor examining Justice Lewis found that Lewis' "problems [began] as early as 2013." [No more specific time period was given.] The doctor noted the issues became worse in the year 2014.

   The opinion in Applicant's case was authored by Justice Kerry P. Fitzgerald, a longtime criminal law practitioner and former chief of the Dallas County DA's Office Appellate Division. Also on the panel was Justice Francis, who also practiced criminal law and was the elected trial judge in the 283rd Judicial District Court, a criminal court in Dallas County, for a number of years prior to being elected to the Fifth Court of Appeals. The opinion was issued July 31, 2013.

   Applicant has failed to present evidence in support of this claim. The document presented by Applicant contains mere allegations against Justice Lewis. Further, there is merely an allegation that the issues began in 2013. Applicant has not presented proof that Justice Lewis was "unfit to discharge his judicial duties at the time of Applicant's direct appeal." (Supp. Memo at 21). Applicant's appeal was properly decided by a three-judge panel.

Dkt. No. 17-60 at 26-27.

As to this thorough discussion of Warterfield's final claim, Warterfield has again not shown that the state court's reasoned denial of this ground for relief was "so patently incorrect as to be unreasonable, nor has [he] offered clear and convincing evidence to overcome the presumption that the factual determinations made by the state court in this regard were correct." *Johnson*, 2012 WL 2277844, at *11; *see also* 28 U.S.C. § 2254(e)(1); *Gardner*, 247 F.3d at 560; *Valdez*, 274 F.3d at 948 n.11; *Ford*, 910 F.3d at 235.

The Court should deny Ground 16.

## Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 28, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE